Francis M. FIX et al.,
v.
The UNITED STATES.
No. 97–60.

Jack BLUE et al.
v.
The UNITED STATES.
No. 496–59.

Jerome BYRNES et al.
v.
The UNITED STATES.
No. 323–60.

United States Court of Claims.
Nov. 10, 1966.

Keith L. Seegmiller, Washington, D. C., attorney of record, for plaintiffs. Francis J. McGan, Butte, Mont., of counsel.

Alfred H. O. Boudreau, Jr., Washington, D. C., with whom was Acting Asst. Atty. Gen., J. William Doolittle, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

DAVIS, Judge.

■ This is a sequel to Byrnes v. United States, 330 F.2d 986, 163 Ct.Cl. 167 (1963, 1964). There we held, in general, that some 60 investigators in the Omaha and San Francisco regions of the Alcohol and Tobacco Tax Division of the Internal Revenue Service were entitled to be paid for their irregular, unscheduled overtime work before July 1, 1955, at the rate of time-and-one-half (under the Federal Employees Pay Act of 1945), and for such work after that date under the 15 per cent premium compensation formula provided by the 1954 Amendments to the 1945 Act.[1] In the proceedings under Rule 47(c) to calculate the actual amounts of recovery, the parties were unable to agree on several legal points (and apparently, also, on some factual issues). The present motion—using the cases of three of the plaintiffs as a test vehicle—seeks to resolve these legal issues so that the determination of the amounts can go forward in routine fashion. Insofar as the motion raises controverted legal questions, we entertain it and give our answers. There are also some continuing factual disputes and uncorrected factual discrepancies; these cannot, of course, be resolved through summary judgment. For that reason we do not accede to the parties' request that we find the precise amount of recovery due each of the movants. The cases will again have to be remanded for further proceedings before the trial commissioner. This opinion will be limited to the broad legal issues emerging from the plaintiffs' motion.

■ Two of these points seek to have us reconsider determinations made when

1. Our amended Conclusion of Law directed (163 Ct.Cl. at 218): "Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiffs in these actions are entitled to recover regular overtime pay for the periods involved in this litigation up to July 1, 1955, and to recover, for the irregular, unscheduled overtime work performed by them during the periods covered by their respective claims after July 1, 1955, 15 percent premium compensation on an annual basis computed under section 401 (2) of the Federal Employees Pay Act of 1945, as amended in 1954, 68 Stat. 1111, and under the same regulations of the Civil Service Commission and the Alcohol and Tobacco Tax Division that were applicable to the same class of investigators during the same period of this litigation, less any premium compensation already paid plaintiffs for such duty and less compensatory time-off actually received, and without any allowance for hours spent in travel status and claimed by plaintiffs as overtime. Judgment is entered to this effect, with the amount due each plaintiff to be determined in further proceedings under Rule 38(c) [now Rule 47 (c)]."

the case was previously before the court —one at plaintiffs' behest and the other at defendant's. We held then that the record in these consolidated cases does not warrant the inclusion of hours of "ordinary normal travel as a basis of granting extra pay beyond the per diem allowed while away from official station" (330 F.2d at 991, 163 Ct.Cl. at 177, 187), and that the special requirements of the travel-status statute, 68 Stat. 1110 (1954), 5 U.S.C. § 912b (1964), had not been shown to exist here (330 F.2d 986, 163 Ct.Cl. at 187). Our conclusion of law (as amended) provided for recovery "without any allowance for hours spent in travel status and claimed by plaintiffs as overtime" (163 Ct.Cl. at 218). Although they disavow any attack (in this respect) on the prior opinion and decision, plaintiffs now ask us, in reality, to see the record and the law differently, and to hold that much of this "so-called travel" was in fact compensable work. We decline to reopen. The general interpretation of the travel statute which we applied earlier has been recently reaffirmed and developed in Burich v. United States, 366 F.2d 984, 177 Ct.Cl. ——, —— (1966). The factual record as it exists at the current stage of the present cases is the same as in 1963 and 1964. Our final determination on liability was made at that time, and there are no sufficient reasons for reevaluating the evidence to see whether or not we should come today to a different conclusion on the facts.

██ We have the same answer, in essence, for defendant's request that we reexamine our holding that "retail liquor duty" performed on overtime can be counted for overtime compensation. This type of duty required the plaintiffs to investigate whether the retail liquor establishments in their areas had the proper federal stamps, had paid the fed-

eral tax, and were complying with federal regulations (such as the restrictions on refilling bottles). Usually this is not arduous or complicated activity, but we found that, to the extent it was performed during overtime, it was compensable work (330 F.2d 986, 163 Ct.Cl. at 196–198, see also 330 F.2d 986, 163 Ct.Cl. at 181–182, 195–196). This position was taken over defendant's insistence that such retail inspection duty outside of regular hours is too routine and insubstantial to be creditable for overtime pay purposes. Again, there is no adequate reason for changing our judicial mind. The record is the same as it was, and there has been no alteration in the governing legal rules.

██ Defendant says, however, that, with respect to this issue, a new factor was injected when we amended our prior judgment[2] to declare that the plaintiffs' premium compensation, after July 1, 1955, was to be computed "under the same regulations of the Civil Service Commission and the Alcohol and Tobacco Tax Division that were applicable to the same class of investigators during the same period of this litigation * * *" (see footnote 1, supra). The regulations of the Alcohol and Tobacco Tax Division,[3] the Government argues, prohibit the inclusion of "retail liquor duty" and office work in the overtime creditable for premium compensation, and therefore, it is said, the plaintiffs cannot, under our amended judgment, take account of those types of work. The defect in this view is the assumption that this amendment to our judgment sanctioned every provision of the Division's regulations and required them to be applied blindly, regardless of their conformity to the statute or to our opinion. The purpose of this part of the amendment in the judgment was to indicate that plaintiffs (investigators in

2. The parties' motions for rehearing and reconsideration were denied in April 1964, but the court amended its opinion and conclusion of law at that time to read as it is set forth in footnote 1, supra (see 163 Ct.Cl. 167, starred footnote).

3. Int.Rev. Mimeograph No. 55–83, dated June 28, 1955; Int.Rev. Mimeograph No. 57–39, dated March 26, 1957.

the Omaha and San Francisco regions) should generally be on a par with the investigators in the other sections who had been getting premium pay—not to authorize the application of illegal requirements to plaintiffs (or to the others). Implicit in the summary reference to the regulations was the conventional thought that they were to control only insofar as they might be valid. Only the lawful regulations of the Civil Service Commission and the Alcohol and Tobacco Tax Division were intended to be applied; the court certainly did not legitimatize, by its mere citation, regulations which ran counter to the legislation and to the very opinion to which the conclusion of law was appended.

 The Division's directives are not valid insofar as they prohibit the inclusion as appropriate overtime of "retail liquor duty" or office work which investigators are required or induced by responsible officials to perform on overtime. Our prior decision in these cases —following Anderson v. United States, 136 Ct.Cl. 365 (1956), and Adams v. United States, 162 Ct.Cl. 766 (1963)— held that such employees are entitled, under the Congressional legislation, to be compensated for all overtime work so induced or demanded. This was true for the period when the only controlling statute was Section 201 of the Federal Employees Pay Act of 1945, 59 Stat. 296, 5 U.S.C. § 911 (1946),[4] and it is equally true of the irregular, unscheduled overtime now governed by the Federal Employees Pay Act Amendments of 1954, § 208(a), 68 Stat. 1111, as amended, 5 U.S.C. § 926 (1964). If the extra work falls into the class of "irregular, unscheduled overtime duty", and the percentage formula is utilized, the 1954 Act does not leave it to the agency to say

that, nevertheless, certain kinds of induced or ordered overtime are not to be treated as compensable overtime under the amendment. The legislative command is that, for employees like plaintiffs, all such work is to be compensated according to the formula provided in the 1954 statute, or by the other extra compensation provisions of the law (including compensatory leave where appropriate), or by a combination of both. No effort by management to evade the statutory requirements can prevail. That is the square teaching of our earlier ruling in favor of these plaintiffs.

██ That decision specifically held and found, as we have pointed out, that "retail liquor duty" and office work could and did come, often enough, within the category of induced or required overtime. We also found that such extra work was irregular and unscheduled. There is no reason to reconsider these factual findings. On their basis, the Division cannot by edict provide that such overtime is not creditable in computing plaintiffs' hours under the 1954 Act. It is irrelevant that these activities may have been routine, easy, or unimportant. It is likewise immaterial that the agents may have been erroneously informed that they could not count this time. So long as the men were induced or required to perform this work after regular hours, as we have found was true of plaintiffs, the time would have to be included. If the regulations attempt to lay down any other rule, they cannot stand since they would then be plainly inconsistent with the governing pay legislation as we have construed it.

The major problem troubling the parties is the method of calculating recovery under the 15% formula of the 1954 Act.[5] One facet of this issue involves

4. "Officers and employees to whom this title applies shall, in addition to their basic compensation, be compensated for *all* hours of employment, *officially ordered or approved*, in excess of forty hours in any administrative workweek, at overtime rates as follows: * * *" [emphasis added].

5. This provision reads as follows (as it appears in 5 U.S.C. § 926 (1964):

"The head of any department, independent establishment, or agency, including Government-owned or controlled corporations, or of the municipal government of the District of Columbia may, with

the proper time-periods. The Civil Service Commission's regulation provides that to be "substantial" under the statute this "irregular, unscheduled" overtime must average at least six hours a week. 5 C.F.R. § 25.263(b) (1) (1961). The Internal Revenue Service regulations add that this quantitative determination of eligibility for premium pay must be made anew each quarter. Int.Rev. Mimeograph No. 55–83, dated June 28, 1955, Section 4.04; Int.Rev. Mimeograph No. 57–39, dated March 26, 1957, Section 10.01.[6] These directives, taken together, require that the investigator perform at least 78 hours of overtime (6 hours for the 13 weeks in the quarter) to be eligible for the 15% premium pay. Plaintiffs claim that this system of quarterly reassessments deprives an investigator of the statutory right to have his overtime determined on an annual basis; it is pointed out that in certain situations an employee will be ineligible for some quarters on the quarterly basis, although he would be qualified if the whole year were treated as a unit and all the hours of overtime merged together.

We could invalidate the Service's regulation only if it clearly contradicted the terms or purpose of the statute. Udall v. Tallman, 380 U.S. 1, 4, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Estate of Bahen v. United States, 305 F.2d 827, 829, 158 Ct.Cl. 141, 145 (1962). In this instance we cannot say that that is so. The unclear reference in the 1954 Act to "premium compensation * * * on an annual basis" does not necessarily mean that the agencies are forbidden to utilize such common administrative devices as quarterly reviews to help in computing the additional pay; those statutory words may simply mean that the starting point for calculating the percent of premium pay (e. g., 15%) shall be the annual wage. The administrators of a statute such as this have some leeway, and their implementing regulations should not be overturned unless clearly wrong. Here, in addition to the normal measure of discretion, there is the specific requirement in the Civil Service Commission's regulation that the agencies should review premium pay determinations "at appropriate intervals" and discontinue payments or revise the rates where such action is necessary. 5 C.F.R. § 25.271(a) (6) (1961). The Service's adoption of the quarterly plan comes within that express authorization.[7]

the approval of the Civil Service Commission, provide that—
　　*　　*　　*　　*　　*
"(2) any officer or employee in a position in which the hours of duty cannot be controlled administratively, and which requires substantial amounts of irregular, unscheduled, overtime duty and duty at night and on holidays with the officer or employee generally being responsible for recognizing, without supervision, circumstances which require him to remain on duty, shall receive premium compensation for such duty on an annual basis in lieu of premium compensation provided by any other provisions of this chapter, except for regularly scheduled overtime duty. Premium compensation under this paragraph shall be determined as an appropriate percentage (not in excess of 15 per centum) of such part of the rate of basic compensation for any such position as does not exceed the minimum scheduled rate of basic compensation provided for grade GS–9 in the Classification Act of 1949, as amended, by taking into consideration the frequency and duration of night, holiday, and unscheduled overtime duty required in such position."

**6.** The same regulation provided that those not eligible for premium pay shall be paid time-and-one-half for their overtime. Int.Rev. Mimeograph No. 55–83, supra, Section 8.03. Int.Rev. Mimeograph No. 57–39, supra, did not repeat this express provision but it did provide (Section 12.09) that the "provisions of this Mimeograph shall not operate to decrease the existing aggregate rate of compensation of any present employee." Plaintiffs were all employed before that time.

**7.** A fortiori, there can be no successful challenge to the Commission's requirement that a minimum of six hours overtime per week is necessary to bring the 1954 Act into effect. That statute demands that the irregular unscheduled overtime be "substantial." The Commis-

Another phase of the same problem is how to treat men whose compensable overtime does not amount to 78 hours for a particular quarter (i. e., 6 hours per week) and who are therefore not eligible for the 15% premium. The Internal Revenue Service might have provided some lesser percentage for these investigators (see footnote 3 of Burich v. United States, 366 F.2d 984, 177 Ct.Cl. —— (1966)), but instead it ruled that they are entitled to time-and-one-half for their overtime hours (see footnote 6, supra). If this mandate were taken without monetary limit, it would be quite possible for a worker ineligible for the 15% premium pay (because he had not worked 78 hours overtime) to earn more overtime pay, at the time-and-one-half rate, than an eligible colleague who is restricted to the 15% overage.[8] This result would contradict the plain aim of the 1954 Act to confine premium compensation, where that statute applies, to a maximum of 15 per cent of the basic rate. In our former decision, we held that the 1954 Act properly applies to these plaintiffs (330 F.2d 986, 163 Ct.Cl. at 175–177, 177–178, 218) because their duty hours could not be controlled administratively, their positions required (in general) substantial amounts of irregular unscheduled overtime, and the Alcohol and Tobacco Tax Division was applying the Act to

other investigators in comparable positions. We also held that plaintiffs never performed regularly scheduled overtime duty (330 F.2d 986, 163 Ct.Cl. at 175, 177). See, also, Burich v. United States, supra. It follows, we think, that plaintiffs' additional pay for overtime could not legally exceed the maximum established by Congress for this type of irregular unscheduled overtime. The Service was authorized to provide that they be paid at the time-and-one-half measure for the quarterly periods they were ineligible for the extra 15% compensation, but it could not provide that this be done without limit—that the employee receive a greater total than Congress allowed in 1954. The most any plaintiff can receive for a quarter is the sum he would have received if he had been fully eligible for the 15% premium compensation. That is the ceiling. This means, of course, that some men will get the maximum for less than 78 hours extra work, while others with many more hours will obtain the same sum. But that anomaly is built directly into the 1954 Act which contemplates, through its 15% restriction, that eligible employees will be paid no more than the maximum no matter how many hours of overtime duty they perform. The necessary consequence is that some will get the same pay for much more work.[9]

---

sion, acting under its general power to implement federal pay legislation (Federal Employes Pay Act of 1945, § 605, 59 Stat. 304, 5 U.S.C. § 945 (1964)), reasonably decided that six hours is the dividing line.

8. For these investigators, some 55–57 hours of overtime would bring them, at time-and-one-half rates, to the same figure as the maximum 15% premium allowance for a man who worked 78 hours overtime. The case of plaintiff Lyngholm furnishes examples. In several quarters he is claiming more, at the time-and-one-half rate, for less than 78 hours than he would have earned if he had worked the larger number of hours. For instance, for the first quarter of 1958 he seeks $279.72 for 64¾ hours (according to his figures), although he would have been entitled only to $224.43 for 78 hours.

9. The Government suggests, alternatively, that, instead of permitting plaintiffs who are ineligible for the 15% premium compensation to be paid at time-and-one-half rates (as the Internal Revenue Service has directed), we order them to be paid for their overtime at a rate proportional to that which they would receive if they were eligible, i. e., the proportion of the 15% premium which their overtime hours bears to 78. Under this theory a plaintiff who worked one-half of 78 hours overtime (39 hours) would receive one-half of 15 per cent (7½ per cent). The difficulty with this proposal is that it has no basis either in the legislation or in the regulations. The Service did not so provide, and the statute certainly does not command such treatment, if the agency wishes to use the time-and-one-half rate (subject to the maximum limitation) for

The final point relates to this genetic imbalance in the statute. Plaintiffs contend, belatedly, that the 1954 Act cannot apply at all to these investigators who were expected to work many hours overtime, and that we were wrong in 1963 and 1964 in extending the Act to them. The argument is that (i) "premium compensation" in federal pay legislation always means that the hourly rate for overtime be time-and-one-half the straight-time rate; (ii) the 15% premium compensation for these investigators works out to considerably less than time-and-one-half per overtime hour, and often to less than straight-time; and (iii) the directive in the 1954 Act that premium compensation be set as an "appropriate" percentage of basic compensation (see footnote 5, supra) means that there can be no utilization of the 1954 Act's formula in these circumstances since that formula could not "appropriately" equate the new type of additional compensation with the mandatory time-and-one-half rate.

 We reject the first and third of these points as erroneous, just as we have repudiated a comparable argument in Burich v. United States, 366 F.2d 984, 177 Ct.Cl. —— (1966). In the 1954 Act, the 15% "premium compensation" is not equated with time-and-one-half, or any other so-called "penalty rate" greater than straight-time. In its context the phrase simply means the additional pay the employee receives, over his basic salary, for working overtime. Congress was unmistakably aware that the new Act was intended to govern the extra compensation of investigators, and it also knew that these employees performed many hours of overtime duty. See the legislative material set forth in Burich v. United States, supra. In these circumstances Congress could not help but recognize that the 15% premium compensation would often amount to far less than straight-time if calculated by the hours of overtime. To accept plaintiffs' contention would thus be to render the 1954 Act almost wholly useless for the very segment of federal employment Congress deliberately sought to cover. As we held in our earlier opinion, plaintiffs' work fits the textual criteria of the 1954 statute. There is nothing in the legislative background to show that the text should not be applied to the situation Congress apparently had in mind; on the contrary, the legislative history affirmatively supports that reading.

Plaintiffs' motion for summary judgment is granted to the extent set forth in this opinion and the cases are returned to the trial commissioner for further proceedings, in accordance with this opinion, under Rule 47(c).

men putting in less than 6 hours overtime per week.

We do not interpret our amended conclusion of law in the prior case as barring plaintiffs' receipt of time-and-one-half, provided that the 15% limitation of the 1954 Act is observed.