Civilian pay; overtime pay; premium pay; computation of irregular, unscheduled overtime during sick leave; Bureau of Alcohol, Tobacco and Firearms special agents. — On June 27,1980 the court entered the following order:
Before Davis, Judge, Presiding, Cowen, Senior Judge, Nichols, Judge.
The plaintiffs are all former special agents for the Bureau of Alcohol, Tobacco and Firearms (BATF), Depart *717 ment of the Treasury. All of them had been receiving premium pay for overtime work pursuant to 5 U.S.C. § 5545(c), because their duties qualified them for administratively uncontrollable overtime (AUO) pay. Immediately prior to the respective dates on which they retired, plaintiffs were in a paid sick leave status, and they were denied premium pay while they were on sick leave. The period of denial ranged from about 7 months in the case of one plaintiff, to slightly more than 1 month in the case of another. However, the material submitted by the parties does not show whether some of the plaintiffs had been on sick leave for a period of time before their premium pay was discontinued, or whether orders discontinuing such pay were made retroactive. Premium pay is part of basic pay for retirement purposes and thus defendant’s action also resulted in reducing plaintiffs’ annuity entitlements and their life insurance coverage. They filed this suit to recover premium pay for the periods during which they were on sick leave, plus the annuity and life insurance benefits to which they would have been entitled if they had received the premium pay.
Plaintiffs’ basic contention is grounded on that part of 5 U.S.C. § 5545(c) which states that persons holding their positions "shall receive premium pay for this duty on an annual basis.” Plaintiffs maintain that the statute, plus the following regulations, required the agency to pay them premium pay on an annual basis during periods while they were on paid leave, or during holidays:
5 C.F.R. § 550.162(e), a regulation promulgated by the Civil Sevice Commission, provides that an agency "shall continue to pay an employee premium pay on an annual basis under §550.141 or §550.151 while he is on leave with pay during a period in which premium pay on an annual basis is payable * *
Treasury Personnel Manual, chapter 550, subchapter 2-6c(2) provides that "annual premium pay for a.u.o. will continue during periods of paid leave and holidays
Defendant counters with the argument that the statute, Civil Service Regulations, Treasury Personnel Manual, and the interpretation of the regulations by the Office of *718 Personnel Management (formerly the Civil Service Commission) all sustain defendant’s action in denying plaintiffs premium pay during the periods in dispute. 5 U.S.C. § 5545(c) limits premium pay to positions which require "substantial amounts of irregular, unscheduled overtime duty.” Defendant relies on the following regulations of the Civil Service Commission:
5 C.F.R. § 550.153 provides:
(1) A substantial amount of irregular or occasional overtime work means an average of at least 3 hours a week of that overtime work.
(2) The irregular or occasional overtime work is a continual requirement, generally averaging more than once a week.
(3) There must be a definite basis for anticipating that the irregular or occasional overtime work will continue over an appropriate period with a duration and frequency sufficient to meet the minimum requirements.
5 C.F.R. § 550.161, provides that: the agency concerned shall be responsible for determining which employee shall receive premium pay on an annual basis; that these determinations may not be retroactive; that the determinations shall be based on consideration of "available records of the hours of irregular or occasional overtime work required in the past, and any other information bearing on the number of hours of duty which may reasonably be expected to be required in the future.”
5 C.F.R. § 550.161(f) provides that the agency determinations of entitlement to premium pay shall be reviewed at appropriate intervals and that such payments shall be discontinued or the rates revised on an annual basis in each instance when necessary to meet the requirements of the statute and the regulations.
The BATF determined that the appropriate interval for reviewing such determinations should be a quarterly basis.
The Civil Service Regulations cited have been supplemented by Treasury Personnel Manual Chapter 550, Sub-chapter 2-9c which provides:
Records of overtime worked will be reviewed at appropriate intervals and a determination made for continuing, discontinuing or changing the annual rate for the prospective period, by appropriate supervisory and managerial levels. Appropriate written documentation of *719 changes should be provided and submitted to employees, payroll offices and other affected persons.
By letter of June 20, 1977, the Office of Personnel Management construed such regulations with respect to the allowance of premium pay while plaintiffs were on sick leave, as follows:
Under these regulations it is reasonable to discontinue the premium pay when it is known, or the agency has reason to believe, the employee will not be performing the minimum amount of irregular or occasional overtime work for an extended period of time regardless of the reason for such. If the leave were of short duration or such that it is not expected to affect the amount of hours of overtime in the future, then it is appropriate to make no adjustments in the amount to be paid.
The premium pay is authorized only if there is a basis for payment stemming from performing work which requires administratively uncontrollable overtime. If such is not required for a period of time it should be discontinued. At some future date it can be reestablished if need be. Of course, if an employee is not in receipt of such premium pay at any given time and he or she actually performs any irregular or unscheduled overtime he is entitled to payment or compensatory time off for all overtime worked.
In Fix v. United States, 177 Ct. Cl. 369, 368 F.2d 609 (1966), this court considered a contention quite similar to that made by plaintiffs in this case in connection with regulations which are practically identical with those involved here. The court there declared as follows:
The unclear reference in the 1954 Act to "premium compensation * * * on an annual basis” does not necessarily mean that the agencies are forbidden to utilize such common administrative devices as quarterly reviews to help in computing the additional pay; those statutory words may simply mean that the starting point for calculating the percent of premium pay (e.g, 15%) shall be the annual wage. The administrators of a statute such as this have some leeway, and their implementing regulations should not be overturned unless clearly wrong. Here, in addition to the normal measure of discretion, there is the specific requirement in the Civil Service Commission’s regulation that the agencies should review premium pay determinations "at appropriate *720 intervals” and discontinue payments or revise the rates where such action is necessary. 5 C.F.R. § 25.271(a)(6) (1961). The Service’s adoption of the quarterly plan comes within that express authorization. [177 Ct. Cl. at 377, 368 F.2d at 614.]
Accordingly, we hold that defendant was authorized to discontinue premium pay to plaintiffs while they were on sick leave, provided that the determinations to discontinue such pay were made on the basis of quarterly reviews and were not made retroactive.
The regulation upon which plaintiffs rely, 5 C.F.R. § 550.162(e), must be read in connection with other applicable regulations. Considered together, the regulations contemplate that while plaintiffs were on leave they would not be entitled to premium pay unless it was during a period in which they were otherwise entitled to such premium pay. In Fix we held that the regulations authorize quarterly determinations of whether premium pay will be allowable for the next quarterly period. Thus, once BATF made a determination that plaintiffs would not be eligible for premium pay during a prospective period (because they would not be working the requisite number of hours), the regulation relied on by plaintiffs became irrelevant. They were on leave, but not "during a period in which premium pay on an annual basis is payable.”
As indicated above, both the Civil Service regulations and the Treasury Personnel Manual provided that the determinations to be made on a quarterly basis, the interval selected by the BATF, should not be made retroactive. In their motion, plaintiffs stated:
Some of the plaintiffs were removed from premium pay at the beginning of a "quarter year” period, some during and some at the end of a quarter.
This statement indicates that in some instances the action taken by BATF to discontinue premium pay may have been given retroactive effect. If so, it would have been in violation of the regulations and plaintiffs would be entitled to recover for those portions of the time spent on sick leave which were not covered by prospective, quarterly determinations that their premium pay was to be discontinued. *721 However, the facts before us do not permit a resolution of this question on summary judgment.
it is therefore ordered that the, case is remanded to the Trial Division for a determination of the amount which any of the plaintiffs may be entitled to recover in accordance with this order.
On February 6, 1981 pursuant to a written stipulation of settlement, the court entered an order determining the amounts which the following plaintiffs are entitled to recover: Sidney R. Anderson, $746.30; Leon A. Estep, $298.52; Charles E. Spear, $427.62; Lawrence S. Spencer, $149.26; Jess D. Todd, $842.52; Dennis G. Vess, $298.52; Thomas C. Williams, $149.26. These amounts have been computed without regard to any state or federal taxes which may be due or which may become due as a result of payment of this judgment. Plaintiffs Clarence B. Corban, James S. Guess, and James F. Less have suffered no injury and are entitled to no judgment against the United States.