**Alan A. ABREU, et al., Plaintiffs–Appellants,**

v.

**The UNITED STATES, Defendant–Appellee.**

No. 91–5054.

United States Court of Appeals, Federal Circuit.

Oct. 24, 1991.

Suggestion for Rehearing In Banc Declined Dec. 13, 1991.

Duane W. Reno, Davis, Reno & Courtney, San Francisco, Cal., argued, for plaintiffs-appellants. With him on the brief was Alan C. Davis. Also on the brief was Ira Lecher, Washington, D.C.

Allen D. Bruns, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for defendant-appellee. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief were Wade M. Plunkett, Atty., Office of the Gen. Counsel, Office of Personnel Management and Major Joyce I. Spisak, Gen. Litigation Div., Office of the Judge Advocate Gen., Dept. of the Air Force, of counsel.

Before NIES, Chief Judge, COWEN, Senior Circuit Judge, and MICHEL, Circuit Judge.

PER CURIAM.

Abreu, *et al.,* approximately, 9000 federally employed firefighters, brought suit in the United States Claims Court for additional compensation for overtime, asserting entitlement under the Fair Labor

Standards Amendments of 1974,* Pub.L. 93–259, 88 Stat. 55 (April 8, 1974), and certain provisions of the Federal Employees Pay Act, 5 U.S.C. §§ 5542, 5545 (1988). The Claims Court (Bruggink, J.) rejected the argument of Abreu, et al., that the method of calculating overtime pay, which had been established by the Office of Personnel Management, and used by their employing agencies, violated those statutes. *Abreu v. United States*, 22 Cl.Ct. 230 (1991). Upon review by this court, we also conclude that the Office of Personnel Management's interpretation of the statutory provisions in dispute is reasonable for the reasons stated by Judge Bruggink. Accordingly, we adopt his opinion through the discussion of this issue, denominated "A. The first issue," as the opinion of this court and append it hereto. We have deleted from the appendix the remaining portion of his opinion entitled "B. The second issue" which concerns what is known as the "two-thirds rule," because the issue was not raised on appeal.

AFFIRMED.

### APPENDIX

Adopted portion of the United States Claims Court opinion:

BRUGGINK, Judge.

These consolidated actions, brought by approximately 9,000 federal firefighters, present two issues: 1) whether defendant's current method of compensating plaintiffs for unscheduled, irregular overtime deprives them of benefits under either the Fair Labor Standards Amendments of 1974 ("FLSA")[1] or under certain provisions of the Federal Employees Pay Act ("FEPA" or "Title 5")[2]; and 2) whether defendant's use of a "two-thirds rule" in excluding sleeping and eating time from 24–hour tours of unscheduled, irregular overtime is contrary to Title 5.

Like other similar actions currently pending or recently decided,[3] the complaint raises difficult questions spawned by the marriage of the FLSA and Title 5 within the federal pay system. It has not always been a happy union. The spouses were married late in life, come from very different backgrounds, and thus bring rather fixed and conflicting viewpoints to the connubial hearth, as this case attests. A legal separation does not appear in the offing, and thus the parties to this lawsuit have filed cross-motions for summary judgment limited to issues concerning liability. The material facts are undisputed. For the following reasons, the court denies plaintiffs' motion for summary judgment and grants defendants' motion for summary judgment.

### I. BACKGROUND FACTS

#### A. Facts related to the first issue

Plaintiffs are civilian firefighters in the GS–081 series employed by various federal agencies. Virtually all the plaintiffs regularly work a scheduled tour of duty of 144 hours (six 24–hour shifts) in a 14–day pay period.[4] Under Title 5 of the United States

---

\* This statute made the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (1988), applicable to the Federal Government.

1. Pub.L. 93–259, 88 Stat. 55 (April 8, 1974), made the FLSA applicable to the federal government. 29 U.S.C. § 203(e)(2) (1988).

2. 5 U.S.C. §§ 5542, 5545 (1988).

3. See, e.g., Lanehart v. Horner, 818 F.2d 1574 (Fed.Cir.1987) (held that Title 5 leave provisions incorporate Title 29 pay calculations which were not otherwise activated by plaintiffs' work schedules); Riggs v. United States, 21 Cl.Ct. 664 (1990) (held that Title 5 "de minimis" rule does not conflict with FLSA); Acton v. United States, 21 Cl.Ct. 214 (1990) (held that overtime claims pursued under Lanehart ruling are subject to two-year Title 29 statute of limitations); Adams

v. United States, No. 90–162C (Cl.Ct. filed Feb. 16, 1990) (whether, inter alia, FLSA definitions of law enforcement officer apply in Title 5 proceedings); Armitage v. United States, 22 Cl.Ct. 206 (1990) (concludes, contrary to Acton, that Title 5 six-year statute of limitations applies); Armitage v. United States, No. 139–89C (Cl.Ct. filed March 17, 1989) (whether Lanehart requires premium payment when leave is taken during scheduled overtime, or Sunday or holiday periods); Abundis v. United States, 15 Cl.Ct. 506 (1988) (defense created by 29 U.S.C. § 259 is unavailable in federal sector FLSA cases). See also discussion at n. 12.

4. A group of plaintiffs employed by the Department of Veterans Affairs work a different numbers of hours during a 14–day pay period. All

Code (1988), firefighters who regularly work 144 hours in a 14–day pay period receive basic pay pursuant to 5 U.S.C. §§ 5322 and 5504(b), and a 25 percent premium pay pursuant to 5 U.S.C. § 5545(c)(1) for regularly scheduled standby duty.

Independently of Title 5, plaintiffs are also entitled to the benefit of certain provisions of the FLSA. Pursuant to 29 U.S.C. § 207(a) and (k), and insofar as relevant here, firefighters are entitled to receive FLSA overtime pay (one and one-half times regular rate of pay[5]) for hours in excess of 106 in a 14–day pay period. Consequently, plaintiffs normally earn 38 hours of FLSA overtime during a two-week period. These hours are not compensated pursuant to 5 U.S.C. § 5542(a)(1) (Title 5 overtime) because standby pay pursuant to section 5545(c)(1) is paid in lieu of other Title 5 premiums, such as regularly scheduled overtime.

The parties have used the pay experience of one of the plaintiffs, Leon P. Contreras, to illustrate their positions. Contreras was a GS–5, step 7 firefighter in July 1988. In the 14–day pay period ending July 30, 1988, he worked a regular 144–hour tour of duty. His basic pay was $695.20. He received a 25 percent premium pursuant to section 5545(c)(1), amounting to $174.40. Together these constitute his regular pay. When divided by 144 hours, this yields a regular rate of $6.04 per hour. Thirty-eight hours of his regular tour constitute overtime pursuant to section 207(k). This is paid at a rate of one-half times his regular rate, and amounts to $114.76 (38 hours × $3.02). When Contreras' basic pay, his Title 5 standby premium, and FLSA overtime are added together, they total $984.36. Thus far, the parties are in agreement, not only

that Contreras was paid in this fashion, but that his pay was correctly calculated.

In addition, from time to time plaintiffs work unscheduled overtime and thus accrue more than 144 hours in a 14–day pay period. These additional hours of unscheduled overtime are not compensated by standby premium pay. Section 5545(c)(1) specifically excludes "irregular, unscheduled overtime duty in excess of [the] regularly scheduled weekly tour." These excess overtime hours thus become eligible for consideration under the Title 5 overtime provision, section 5542(a)(1), or as additional FLSA overtime pursuant to section 207(k). Pursuant to Federal Personnel Manual Letter ("FPM Ltr.") 551–5, Attachment 3(A)(1), "[f]ederal employees engaged in fire protection activities ... are entitled to compensation for overtime work under title 5, United States Code, or under the special overtime provision of section 7(k) of the FLSA; whichever provides them with the greater *overtime* benefit." (Emphasis in original.)[6] It is the way in which defendant performs this calculation that leads to the first point of dispute.

The Title 5 overtime provision, section 5542(a)(1), directs that the additional pay is calculated at "an amount equal to one and one-half times the hourly rate of basic pay of the employee." The FLSA calculation, pursuant to section 207(k), for these additional hours is similar, but not identical to that for the preceding 38 hours. The same "regular rate" is utilized, but for irregular, unscheduled hours, there has been no basic pay. Thus, instead of one-half the regular rate, the calculation is one and one-half times the regular rate. Once again, the parties have framed an example based on plaintiff Contreras. The separate FLSA and Title 5 calculations are shown below based on 33 hours of irregular overtime.

discussion will be cast in terms of the other plaintiffs, however, for sake of convenience. The legal conclusions will not vary because of these shift variances.

**5.** Federal Personnel Manual Ltr. 551–5, Attachment 2(D)(2).

**6.** The legislative history of the 1974 Amendments reflects a desire by the Congress that the Office of Personnel Management administer the

FLSA for federal employees so as to "assure consistency with the meaning, scope, and application established by the rulings, regulations, interpretations, and opinions of the Secretary of Labor which are applicable in other sectors of the economy." H.R.Rep. No. 913, 93d Cong., 2d Sess. 28 (1974), *reprinted in* 1974 U.S.Code Cong. & Admin.News 2811, 2837. *See Riggs v. United States,* 21 Cl.Ct. 664, 668 (1990).

An important point of difference is that the FLSA calculation is shown with respect to *all* hours subject to FLSA overtime (any hours in excess of 106).

FLSA overtime calculation:

 a. For 38 hours of scheduled overtime— $3.02 (½ regular rate) × 38 = $114.76

 b. For 33 hours of irregular overtime— $9.06 (1½ regular rate) × 33 = $298.98

Title 5 overtime calculation:

 a. For 33 hours of irregular overtime— $13.04 (1½ basic rate) × 33 = $430.32

Title 5 overtime will always be more on an hourly basis for firefighters than FLSA overtime because it is calculated on the firefighter's "basic rate" of pay. Pursuant to 5 U.S.C. § 5504(b)(1), hourly rates are derived by dividing annual salary by 2,087 hours. This yields a basic rate of pay for Contreras of $8.69.

Defendant's practice has been to compare the Title 5 overtime for 33 hours ($430.32 in this example) with the total of FLSA overtime for both irregular and regularly scheduled hours ($413.74) and pay whichever is greater. In this example, since the Title 5 premium for 33 hours is greater than FLSA overtime for 71 hours, Contreras was paid $430.32, and he was not paid an additional $114.76 as FLSA overtime for scheduled overtime.

The result of defendant's methodology is that firefighters who work more than approximately 29 hours of irregular unscheduled overtime will always be paid Title 5 overtime for those hours and will not be paid FLSA overtime for either scheduled or unscheduled overtime. For firefighters who happen to work less than 29 hours of unscheduled overtime, the result is reversed, as is shown by the following example taken from plaintiffs' brief. In the example, Contreras has worked a regular 144–hour pay period, plus 22 hours of unscheduled overtime.

FLSA overtime calculation:

 a. For 38 hours of scheduled overtime— $3.02 (½ regular rate) × 38 = $114.76

 b. For 22 hours of unscheduled overtime—

$9.06 (1½ regular rate) × 22 = $199.32

Title 5 overtime calculation:

 a. For 22 hours of unscheduled overtime—

$13.04 (1½ basic rate) × 22 hours = $286.77

Defendant compares the Title 5 amount for 22 hours with the total for all FLSA overtime, i.e. for 60 hours, and pays the FLSA amount of $314.08 since it is greater. No Title 5 premium is therefore paid for the unscheduled overtime.

Drawing once again from these two examples, it is plaintiffs' position that the comparison should have been between Title 5 pay for unscheduled overtime and only that portion of FLSA overtime attributable to those same unscheduled hours. In the first example, the Title 5 amount of $430.32 should have been compared, according to plaintiffs, to the FLSA amount of $298.98. Since Title 5 is greater, it should have been paid, but only in place of the 33 hours of unscheduled overtime. It should not supplant FLSA pay for the 38 hours of scheduled overtime. Thus, in plaintiffs' view, Contreras should have been paid a total of $545.08 in overtime ($114.76 as FLSA overtime and $430.32 as Title 5 overtime).

In the second example, plaintiffs take the view that a proper comparison would be limited to the 22 hours of unscheduled overtime. Because the $286.77 to which he would have been entitled under Title 5 is more than the $199.32 produced in the FLSA calculation for unscheduled overtime, Contreras should get FLSA overtime for scheduled overtime, and Title 5 for 22 hours of unscheduled overtime, in a total amount of $401.53 ($114.76 as FLSA overtime and $286.77 as Title 5 overtime).

\* \* \*

## II. DISCUSSION

### A. The first issue

■ After the 1974 Amendments to the FLSA, federal employees have been able to pursue overtime claims under either the FLSA or FEPA. Concurrent with the 1974 Amendments, Congress gave the Civil Service Commission (now the Office of Personnel Management ("OPM")), authority to ad-

minister the FLSA with respect to federal employees. 29 U.S.C. § 204(f). Consequently, OPM has authority to adopt overtime regulations under both FEPA and FLSA.[7] In implementation of that authority, OPM issued FPM Ltr. 551–5 on January 15, 1975 to instruct agencies in applying the FLSA and FEPA to firefighters. The following language, the application of which has been described above, creates the present controversy:

### A. Overtime Provisions of title 5

#### 1. General Statement

Federal employees engaged in fire protection activities or law enforcement activities are entitled to compensation for overtime work under title 5, United States Code, or under the special overtime provision of section 7(k) of the FLSA; whichever provides them the greater *overtime* benefit....

FPM Ltr. 551–5, Attachment 3(A)(1). (Emphasis in original.) Plaintiffs contend that this instruction is inconsistent with their statutory entitlements. Specifically, they contend that the relevant comparison should not be between all FLSA overtime and Title 5 overtime, but between *unscheduled* FLSA overtime and Title 5 overtime. The latter comparison would, perforce, be limited to precisely the same particular hours, whereas the approach directed by the FPM Letter contrasts all Title 5 overtime compensation (merely unscheduled hours), with all FLSA overtime (which consists of all hours in excess of 106). Plaintiffs' approach would require agencies to maintain the Title 5 distinction between scheduled and unscheduled overtime throughout both the Title 29 calculation and the comparison between the two figures. Plaintiffs' approach thus focuses on particular hours; defendant's approach focuses on a single category of pay—overtime—as determined by the respective statutes.

The fundamental question thus presented is whether defendant must calculate and compare scheduled overtime under Title 5 with the equivalent number of hours under Title 29, and then separately make the same comparison between unscheduled Title 5 overtime hours and the equivalent Title 29 hours. To state the issue somewhat differently, the question is whether, at the end of their regular 144–hour shift, plaintiffs have a vested right to a separate calculation for 38 hours of FLSA overtime, or whether all their hours can be considered collectively at the end of their two week pay period.

Plaintiffs' primary argument is that defendant's methodology deprives them alternatively of the statutory benefit created by 5 U.S.C. § 5542(a)(1) or 29 U.S.C. § 207(k). The court disagrees. As the Court of Claims suggested in *Fix v. United States*, 177 Ct.Cl. 369, 368 F.2d 609 (1966), the question becomes whether the FPM Letter "clearly contradicted the terms or purpose of the statute," *id.* at 377, 368 F.2d at 614, insofar as it addressed the comparison of overtime pay under the two statutes. Section 5542(a)(1), when read in conjunction with section 5545(c)(1), only creates an entitlement with respect to unscheduled overtime hours. As to those hours, plaintiffs are guaranteed to receive "one and one-half times the hourly rate of basic pay." The corresponding FLSA section is 207(k), read in conjunction with section 207(a). Those sections assure plaintiffs that for every hour in excess of 106 per pay period, they are entitled, at a minimum, to one and one-half their regular rate of pay. Plaintiffs' pay therefore must satisfy two levels of inquiry. The first, with respect to both scheduled and unscheduled hours in excess of 106, is whether they always received, at a minimum, an amount equivalent to the sum of one-half their regular rate of pay for 38 hours, plus one and one-half times their regular rate for the excess? The second inquiry is whether, for all hours in excess of 144, they have received the equiv-

---

**7.** *Compare* 5 C.F.R. §§ 550.111–550.114 (1990) *with* 5 C.F.R. §§ 551.501–551.541 (1990). As firefighters, plaintiffs receive standby premium pay under 5 U.S.C. § 5545. This makes them ineligible, under FEPA, to receive overtime pay for regularly scheduled overtime work. *See* 5 U.S.C. § 5545.

alent of one and one-half times their basic rate of pay? A return to plaintiffs' examples demonstrates that, from the point of the controlling statutes, plaintiffs have been properly paid.

In the first example, Contreras worked a total of 71 hours of FLSA overtime. For Title 5 purposes, this is 38 hours of scheduled and 33 hours of unscheduled overtime. In this circumstance, Contreras has been receiving Title 5 pay for the 38 hours, since it exceeds payment under Title 29. Plaintiffs contend that this practice "supplants" his right under Title 29 to receive compensation for the first 38 hours of FLSA overtime. "The practical effect is thus an implied repeal of the Title 5 provisions." Brief of April 27, 1990 p. 25. Consideration of what the two statutes guarantee Contreras demonstrates that this is incorrect. Contreras is entitled to a minimum of $413.74 for those 71 hours under section 207(k), and no more. Title 5, on the other hand, speaks, insofar as relevant here, only to the 33 hours of unscheduled overtime. As to those hours, plaintiffs are entitled to a minimum of $430.32. By paying the latter amount, defendant independently satisfied both statutory provisions.

In the second example, Contreras worked 60 hours of FLSA overtime. He receives pay under the FLSA, because 60 hours calculated pursuant to that statute exceed Title 5 overtime pay for 22 unscheduled hours. By paying the larger amount, the FLSA calculation, defendant also satisfies the Title 5 minimum. Plaintiffs' error is reflected in their frequent use of the contention that after defendant's calculation, they "no longer receive" their Title 5 pay. This characterization incorrectly assumes that, at the conclusion of a regular 144–hour shift, whatever pay plaintiffs would have received is permanently fixed without regard to whether they worked additional unscheduled overtime.

What plaintiffs overlook is that while defendant's pay scheme must satisfy both statutory requirements, the inquiries are nonetheless independent.[8] Plaintiffs are mixing the statutes by incorporating Title 5 distinctions into Title 29 calculations prior to determination of the separate entitlements. Plaintiffs are in effect suggesting that, through a sort of gestalt process, the whole is greater than the sum of its parts. Such a result is not required by the statutes.

By emphasizing that the comparison is between *"overtime"* calculations, the FPM Letter has taken a reasonable approach to interpreting the two statutes. The letter has been in existence since 1975, virtually contemporaneously with the adoption of the 1974 Amendments. As plaintiffs concede, it is well settled that courts should show "great deference to the interpretation given the statute by the officers or agency charged with its administration." *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Nor is it necessary that the agency's "construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings." *Id.* (quoting *Unemployment Compensation Comm'n v. Aragan*, 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136 (1946)). *See also Red Lion Broadcasting Co. v. Federal Communications Comm'n*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969). The Federal Circuit has also admonished that "the longstanding interpretation placed on a statute by the agency charged with its administration should be followed unless there are compelling reasons that it is wrong." *Money v. OPM*, 811 F.2d 1474, 1477 (Fed. Cir.1987); *see also Young v. Community Nutrition Inst.*, 476 U.S. 974, 980–81, 106

---

**8.** Plaintiffs' reliance on *Lanehart v. Horner,* 818 F.2d 1574 (Fed.Cir.1987), is inappropriate. Contrary to their suggestion, the effect of that decision was not to eliminate distinctions between the two statutory schemes. The narrow issue in that case involved construction of the Title 5 leave with pay provisions. The court held that the wording of those statutes required, in effect, an incorporation into Title 5 pay of calculations made under Title 29, even though Title 29 would not independently have permitted a recovery. There is no comparable statutory mandate in this instance.

S.Ct. 2360, 2364–65, 90 L.Ed.2d 959 (1986); *Horner v. Andrzjewski,* 811 F.2d 571, 574 (Fed.Cir.1987), *cert. denied,* 484 U.S. 912, 108 S.Ct. 257, 98 L.Ed.2d 215 (1987); *De-Costa v. United States,* 22 Cl.Ct. 165 (Cl. Ct.1990).

Defendant's methodology is not at odds with *Walling v. A.H. Belo Corp.,* 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716 (1942). Plaintiffs rely on that decision for the proposition that they are entitled to FLSA overtime for each hour of work beyond the statutory maximum at a rate "not less than one and one-half times the regular rate at which he is employed." *Id.* at 631, 62 S.Ct. at 1227. From this plaintiffs conclude that each hour of overtime is a separate unit, which can be contrasted to Title 5 compensation for the identical hour regardless of the total amount of overtime worked. *Walling* does not stand for that proposition, however, and the language quoted merely confirms what is apparent from the statute. At no time, however, have plaintiffs not received an amount equivalent to one and one-half their regular rate for all FLSA overtime.

Defendant's motion advances a considerably more complex defense of OPM's interpretation of the two overtime statutes. It suggests that two additional provisions of the FLSA are relevant. The first is section 207(e), which in relevant part provides:

As used in this section the "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include—

. . . .

(5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of . . . the employee's normal working hours or regular working hours

. . . . .

The latter subsection would embrace overtime paid pursuant to section 5542(a)(1)[9]. Indeed the Title 5 provision specifically refers to the compensation it authorizes as "premium" pay. Defendant then points to section 207(h), which states that "[e]xtra compensation paid as described in paragraph[ ] (5) . . . of this section shall be creditable toward overtime compensation payable pursuant to this section."

From these two provisions, defendant concludes that in those circumstances in which a comparison of Title 5 overtime to FLSA overtime results in payment exclusively under Title 5, and not under Title 29, section 207(h) credits those Title 5 payments as if they were made under Title 29. It is not entirely clear to the court what infirmity would exist in defendant's practice absent this crediting provision. As discussed above, the real inquiry is whether the pay scheme independently satisfies the two separate entitlement calculations. It does. In that respect section 207(h) is not, in the court's view, necessary to the defendant's position. With respect to any potential infirmity under the FLSA, however, section 207(h) does make it clear that when pay is received under a Title 5 premium pay provision, such as section 5542(a)(1), it is credited toward FLSA entitlement.

Plaintiffs' response to defendant's reliance on section 207(h) is that payments under Title 5 can only be credited, for FLSA purposes, with respect to the precise hours used to calculate the Title 5 premium. This response, like defendant's argument in the first instance, begs the question of whether the underlying overtime pay provisions have to be converted to the same "currency" before they can be compared. As discussed above, the court is of the view that they do not. The FPM Let-

9. Section 5542(a)(1) provides that compensation for hours of unscheduled overtime is calculated at "an amount equal to one and one-half times the hourly rate of basic pay of the employee, and all that amount is premium pay."

ter's interpretation is reasonable—the defendant is permitted to independently assess what the pay would be under section 207(k) and compare that with what pay would be under section 5542(a). The basis of comparison is pay methodologies expressed in terms of money, not hours.[10]

As the court intimated at the outset, the parties are grappling with the flotsam of incomplete legislation. Titles 5 and Title 29 do not mesh with the machined precision of the gears in a Swiss watch. It is too much to ask that they give a perfectly synchronous performance. A best effort at implementing the spirit of both statutes, while giving employees the benefit of whichever is greater, inevitably creates a crazy quilt. Although the court cannot hope to discern, much less impose, complete coherence, it can ensure that OPM has put together the various pieces of pay entitlement in a way that eliminates gaps and minimizes overlaps. This it has done, and the court cannot conclude that OPM has violated either statute.

---

**10.** Plaintiffs' reliance on *Brennan v. Valley Towing Co.,* 515 F.2d 100 (9th Cir.1975), is misplaced. The language quoted by plaintiffs concerns entirely different circumstances and calculations. The company in that case had not been separately calculating regularly scheduled overtime. It simply paid a straight rate for all 47 hours comprising the regular workweek. It was ordered to determine a regular rate based on pay for the 47–hour period, and then pay one and one-half times that rate for the seven hours of overtime. The company had also been paying generous compensation for hours in excess of 47 per week. It was prevented in the opinion from crediting amounts in excess of overtime pay paid in the post 47–hour period toward regularly scheduled overtime. Defendant's practice here is not analogous. Plaintiffs. are consistently receiving a minimum of the equivalent of one and one-half times their regular rate of pay for all overtime, scheduled or unscheduled. This satisfies the concern expressed in the Ninth Circuit's opinion that each hour of overtime must separately meet the "one and one-half of regular rate" requirement.