**Alan A. ABREU, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

Nos. 574–88C, 661–88C, 695–88C & 95–89C.

United States Claims Court.

Jan. 2, 1991.

---

Ira M. Lechner, Washington, D.C., and Jeffrey A. Dinkin, San Francisco, Cal., for plaintiffs.

Allen D. Bruns, with whom were Asst. Atty. Gen. Stuart M. Gerson and David M. Cohen, Washington, D.C., for defendant. Wade Plunkett, Washington, D.C., Office of Personnel Management, of counsel.

## OPINION

BRUGGINK, Judge.

These consolidated actions, brought by approximately 9,000 federal firefighters,

present two issues: 1) whether defendant's current method of compensating plaintiffs for unscheduled, irregular overtime deprives them of benefits under either the Fair Labor Standards Amendments of 1974 ("FLSA")[1] or under certain provisions of the Federal Employees Pay Act ("FEPA" or "Title 5")[2]; and 2) whether defendant's use of a "two-thirds rule" in excluding sleeping and eating time from 24–hour tours of unscheduled, irregular overtime is contrary to Title 5.

Like other similar actions currently pending or recently decided,[3] the complaint raises difficult questions spawned by the marriage of the FLSA and Title 5 within the federal pay system. It has not always been a happy union. The spouses were married late in life, come from very different backgrounds, and thus bring rather fixed and conflicting viewpoints to the connubial hearth, as this case attests. A legal separation does not appear in the offing, and thus the parties to this lawsuit have filed cross-motions for summary judgment limited to issues concerning liability. The material facts are undisputed. For the following reasons, the court denies plaintiffs' motion for summary judgment and grants defendant's motion for summary judgment.

## I. BACKGROUND FACTS

### A. Facts related to the first issue

Plaintiffs are civilian firefighters in the GS–081 series employed by various federal agencies. Virtually all the plaintiffs regularly work a scheduled tour of duty of 144 hours (six 24–hour shifts) in a 14–day pay period.[4] Under Title 5 of the United States Code (1988), firefighters who regularly work 144 hours in a 14–day pay period receive basic pay pursuant to 5 U.S.C. §§ 5332 and 5504(b), and a 25 percent premium pay pursuant to 5 U.S.C. § 5545(c)(1) for regularly scheduled standby duty.

■ Independently of Title 5, plaintiffs are also entitled to the benefit of certain provisions of the FLSA. Pursuant to 29 U.S.C. § 207(a) and (k), and insofar as relevant here, firefighters are entitled to receive FLSA overtime pay (one and one-half times regular rate of pay[5]) for hours in excess of 106 in a 14–day pay period. Consequently, plaintiffs normally earn 38 hours of FLSA overtime during a two-week period. These hours are not compensated pursuant to 5 U.S.C. § 5542(a)(1) (Title 5 overtime) because standby pay pursuant to section 5545(c)(1) is paid in lieu of other Title 5 premiums, such as regularly scheduled overtime.

The parties have used the pay experience of one of the plaintiffs, Leon P. Contreras, to illustrate their positions. Contreras was a GS–5, step 7 firefighter in July 1988. In the 14–day pay period ending July 30, 1988, he worked a regular 144–hour tour of duty. His basic pay was $695.20. He received a 25 percent premium pursuant to section 5545(c)(1), amounting to $174.40. Together these constitute his regular pay. When

---

1. Pub.L. 93–259, 88 Stat. 55 (April 8, 1974), made the FLSA applicable to the federal government. 29 U.S.C. § 203(e)(2) (1988).

2. 5 U.S.C. §§ 5542, 5545 (1988).

3. *See, e.g., Lanehart v. Horner,* 818 F.2d 1574 (Fed.Cir.1987) (held that Title 5 leave provisions incorporate Title 29 pay calculations which were not otherwise activated by plaintiffs' work schedules); *Riggs v. United States,* 21 Cl.Ct. 664 (1990) (held that Title 5 *"de minimis"* rule does not conflict with FLSA); *Acton v. United States,* 21 Cl.Ct. 214 (1990) (held that overtime claims pursued under *Lanehart* ruling are subject to two-year Title 29 statute of limitations); *Adams v. United States,* 21 Cl.Ct. 795 (1990) (whether, *inter alia,* FLSA definitions of law enforcement officer apply in Title 5 proceedings); *Armitage v. United States,* 22 Cl.Ct. 206 (Cl.Ct.1990) (con-

cludes, contrary to *Acton,* that Title 5 six-year statute of limitations applies); *Armitage v. United States,* 18 Cl.Ct. 310 (1989) (whether *Lanehart* requires premium payment when leave is taken during scheduled overtime, or Sunday or holiday periods); *Abundis v. United States,* 15 Cl.Ct. 506 (1988) (defense created by 29 U.S.C. § 259 is unavailable in federal sector FLSA cases). *See also* discussion at n. 12.

4. A group of plaintiffs employed by the Department of Veterans Affairs work a different number of hours during a 14–day pay period. All discussion will be cast in terms of the other plaintiffs, however, for sake of convenience. The legal conclusions will not vary because of these shift variances.

5. Federal Personnel Manual Ltr. 551–5, Attachment 2(D)(2).

divided by 144 hours, this yields a regular rate of $6.04 per hour. Thirty-eight hours of his regular tour constitute overtime pursuant to section 207(k). This is paid at a rate of one-half times his regular rate, and amounts to $114.76 (38 hours × $3.02). When Contreras' basic pay, his Title 5 standby premium, and FLSA overtime are added together, they total $984.36. Thus far, the parties are in agreement, not only that Contreras was paid in this fashion, but that his pay was correctly calculated.

In addition, from time to time plaintiffs work unscheduled overtime and thus accrue more than 144 hours in a 14–day pay period. These additional hours of unscheduled overtime are not compensated by standby premium pay. Section 5545(c)(1) specifically excludes "irregular, unscheduled overtime duty in excess of [the] regularly scheduled weekly tour." These excess overtime hours thus become eligible for consideration under the Title 5 overtime provision, section 5542(a)(1), or as additional FLSA overtime pursuant to section 207(k). Pursuant to Federal Personnel Manual Letter ("FPM Ltr.") 551–5, Attachment 3(A)(1), "[f]ederal employees engaged in fire protection activities ... are entitled to compensation for overtime work under title 5, United States Code, or under the special overtime provision of section 7(k) of the FLSA; whichever provides them with the greater *overtime* benefit." (Emphasis in original.)[6] It is the way in which defendant performs this calculation that leads to the first point of dispute.

The Title 5 overtime provision, section 5542(a)(1), directs that the additional pay is calculated at "an amount equal to one and one-half times the hourly rate of basic pay of the employee." The FLSA calculation, pursuant to section 207(k), for these additional hours is similar, but not identical to that for the preceding 38 hours. The same "regular rate" is utilized, but for irregular, unscheduled hours, there has been no basic

pay. Thus, instead of one-half the regular rate, the calculation is one and one-half times the regular rate. Once again, the parties have framed an example based on plaintiff Contreras. The separate FLSA and Title 5 calculations are shown below based on 33 hours of irregular overtime. An important point of difference is that the FLSA calculation is shown with respect to *all* hours subject to FLSA overtime (any hours in excess of 106).

FLSA overtime calculation:

a. For 38 hours of scheduled overtime—
$3.02 (½ regular rate) × 38 = $114.76

b. For 33 hours of irregular overtime—
$9.06 (1½ regular rate) × 33 = $298.98

Title 5 overtime calculation:

a. For 33 hours of irregular overtime—
$13.04 (1½ basic rate) × 33 = $430.32

Title 5 overtime will always be more on an hourly basis for firefighters than FLSA overtime because it is calculated on the firefighter's "basic rate" of pay. Pursuant to 5 U.S.C. § 5504(b)(1), hourly rates are derived by dividing annual salary by 2,087 hours. This yields a basic rate of pay for Contreras of $8.69.

Defendant's practice has been to compare the Title 5 overtime for 33 hours ($430.32 in this example) with the total of FLSA overtime for both irregular and regularly scheduled hours ($413.74) and pay whichever is greater. In this example, since the Title 5 premium for 33 hours is greater than FLSA overtime for 71 hours, Contreras was paid $430.32, and he was not paid an additional $114.76 as FLSA overtime for scheduled overtime.

The result of defendant's methodology is that firefighters who work more than approximately 29 hours of irregular unscheduled overtime will always be paid Title 5 overtime for those hours and will not be paid FLSA overtime for either scheduled or unscheduled overtime. For firefighters

---

**6.** The legislative history of the 1974 Amendments reflects a desire by the Congress that the Office of Personnel Management administer the FLSA for federal employees so as to "assure consistency with the meaning, scope, and application established by the rulings, regulations, interpretations, and opinions of the Secretary of Labor which are applicable in other sectors of the economy." H.R.Rep. No. 913, 93d Cong., 2d Sess. 28 (1974), *reprinted in* 1974 U.S. Code Cong. & Admin. News 2811, 2837. *See Riggs v. United States,* 21 Cl.Ct. 664, 668 (1990).

who happen to work less than 29 hours of unscheduled overtime, the result is reversed, as is shown by the following example taken from plaintiffs' brief. In the example, Contreras has worked a regular 144–hour pay period, plus 22 hours of unscheduled overtime.

FLSA overtime calculation:

a. For 38 hours of scheduled overtime— $3.02 (½ regular rate) × 38 = $114.76

b. For 22 hours of unscheduled overtime— $9.06 (1½ regular rate) × 22 = $199.32

Title 5 overtime calculation:

a. For 22 hours of unscheduled overtime— $13.04 (1½ basic rate) × 22 hours = $286.77

Defendant compares the Title 5 amount for 22 hours with the total for all FLSA overtime, i.e. for 60 hours, and pays the FLSA amount of $314.08 since it is greater. No Title 5 premium is therefore paid for the unscheduled overtime.

Drawing once again from these two examples, it is plaintiffs' position that the comparison should have been between Title 5 pay for unscheduled overtime and only that portion of FLSA overtime attributable to those same unscheduled hours. In the first example, the Title 5 amount of $430.32 should have been compared, according to plaintiffs, to the FLSA amount of $298.98. Since Title 5 is greater, it should have been paid, but only in place of the 33 hours of unscheduled overtime. It should not supplant FLSA pay for the 38 hours of scheduled overtime. Thus, in plaintiffs' view, Contreras should have been paid a total of $545.08 in overtime ($114.76 as FLSA overtime and $430.32 as Title 5 overtime).

In the second example, plaintiffs take the view that a proper comparison would be limited to the 22 hours of unscheduled overtime. Because the $286.77 to which he would have been entitled under Title 5 is more than the $199.32 produced in the

FLSA calculation for unscheduled overtime, Contreras should get FLSA overtime for scheduled overtime, and Title 5 for 22 hours of unscheduled overtime, in a total amount of $401.53 ($114.76 as FLSA overtime and $286.77 as Title 5 overtime).

### B. Facts related to the second issue

On occasion, plaintiffs work unscheduled overtime in complete 24–hour shifts. When that occurs, some of the defendant agencies calculate the amount of actual work hours by first presuming that eight hours of the 24–hour shift are for sleeping and eating. The result is that defendant only pays for 16 hours of overtime for such a shift. No effort is made to connect this eight-hour period with particular duty hours. Agencies are given permission to apply this so-called "two-thirds" rule pursuant to FPM Ltr. 551–5 Attachment 3(B)(3)(b), which provides that when a firefighter "is on duty for an additional 24–hour shift outside his regularly scheduled tour of duty, the agency may apply the two-thirds rule for this period of irregular or occasional overtime." Some of the agencies employing plaintiffs do not utilize the two-thirds rule; others do. Plaintiffs contend that those which make use of the presumption are acting contrary to law.

## II. DISCUSSION

### A. The first issue

■ After the 1974 Amendments to the FLSA, federal employees have been able to pursue overtime claims under either the FLSA or FEPA. Concurrent with the 1974 Amendments, Congress gave the Civil Service Commission (now the Office of Personnel Management ("OPM")), authority to administer the FLSA with respect to federal employees. 29 U.S.C. § 204(f). Consequently, OPM has authority to adopt overtime regulations under both FEPA and FLSA.[7] In implementation of that authority, OPM issued FPM Ltr. 551–5 on January

---

7. *Compare* 5 C.F.R. §§ 550.111–550.114 (1990) *with* 5 C.F.R. §§ 551.501–551.541 (1990). As firefighters, plaintiffs receive standby premium pay under 5 U.S.C. § 5545. This makes them ineligible, under FEPA, to receive overtime pay for regularly scheduled overtime work. *See* 5 U.S.C. § 5545.

15, 1975 to instruct agencies in applying the FLSA and FEPA to firefighters. The following language, the application of which has been described above, creates the present controversy:

## A. Overtime Provisions of title 5
### 1. General Statement

Federal employees engaged in fire protection activities or law enforcement activities are entitled to compensation for overtime work under title 5, United States Code, or under the special overtime provision of section 7(k) of the FLSA; whichever provides them the greater *overtime* benefit. . . .

FPM Ltr. 551–5, Attachment 3(A)(1). (Emphasis in original.) Plaintiffs contend that this instruction is inconsistent with their statutory entitlements. Specifically, they contend that the relevant comparison should not be between all FLSA overtime and Title 5 overtime, but between *unscheduled* FLSA overtime and Title 5 overtime. The latter comparison would, perforce, be limited to precisely the same particular hours, whereas the approach directed by the FPM Letter contrasts all Title 5 overtime compensation (merely unscheduled hours), with all FLSA overtime (which consists of all hours in excess of 106). Plaintiffs' approach would require agencies to maintain the Title 5 distinction between scheduled and unscheduled overtime throughout both the Title 29 calculation and the comparison between the two figures. Plaintiffs' approach thus focuses on particular hours; defendant's approach focuses on a single category of pay—overtime—as determined by the respective statutes.

The fundamental question thus presented is whether defendant must calculate and compare scheduled overtime under Title 5 with the equivalent number of hours under Title 29, and then separately make the same comparison between unscheduled Title 5 overtime hours and the equivalent Title 29 hours. To state the issue somewhat differently, the question is whether, at the end of their regular 144–hour shift, plaintiffs have a vested right to a separate calculation for 38 hours of FLSA overtime, or whether all their hours can be considered collectively at the end of their two week pay period.

Plaintiffs' primary argument is that defendant's methodology deprives them alternatively of the statutory benefit created by 5 U.S.C. § 5542(a)(1) or 29 U.S.C. § 207(k). The court disagrees. As the Court of Claims suggested in *Fix v. United States*, 177 Ct.Cl. 369, 368 F.2d 609 (1966), the question becomes whether the FPM Letter "clearly contradicted the terms or purpose of the statute," *id.* at 377, 368 F.2d at 614, insofar as it addressed the comparison of overtime pay under the two statutes. Section 5542(a)(1), when read in conjunction with section 5545(c)(1), only creates an entitlement with respect to unscheduled overtime hours. As to those hours, plaintiffs are guaranteed to receive "one and one-half times the hourly rate of basic pay." The corresponding FLSA section is 207(k), read in conjunction with section 207(a). Those sections assure plaintiffs that for every hour in excess of 106 per pay period, they are entitled, at a minimum, to one and one-half their regular rate of pay. Plaintiffs' pay therefore must satisfy two levels of inquiry. The first, with respect to both scheduled and unscheduled hours in excess of 106, is whether they always received, at a minimum, an amount equivalent to the sum of one-half their regular rate of pay for 38 hours, plus one and one-half times their regular rate for the excess? The second inquiry is whether, for all hours in excess of 144, they have received the equivalent of one and one-half times their basic rate of pay? A return to plaintiffs' examples demonstrates that, from the point of the controlling statutes, plaintiffs have been properly paid.

In the first example, Contreras worked a total of 71 hours of FLSA overtime. For Title 5 purposes, this is 38 hours of scheduled and 33 hours of unscheduled overtime. In this circumstance, Contreras has been receiving Title 5 pay for the 38 hours, since it exceeds payment under Title 29. Plaintiffs contend that this practice "supplants" his right under Title 29 to receive compensation for the first 38 hours of FLSA over-

time. "The practical effect is thus an implied repeal of the Title 5 provisions." Brief of April 27, 1990 p. 25. Consideration of what the two statutes guarantee Contreras demonstrates that this is incorrect. Contreras is entitled to a minimum of $413.74 for those 71 hours under section 207(k), and no more. Title 5, on the other hand, speaks, insofar as relevant here, only to the 33 hours of unscheduled overtime. As to those hours, plaintiffs are entitled to a minimum of $430.32. By paying the latter amount, defendant independently satisfied both statutory provisions.

In the second example, Contreras worked 60 hours of FLSA overtime. He receives pay under the FLSA, because 60 hours calculated pursuant to that statute exceed Title 5 overtime pay for 22 unscheduled hours. By paying the larger amount, the FLSA calculation, defendant also satisfies the Title 5 minimum. Plaintiffs' error is reflected in their frequent use of the contention that after defendant's calculation, they "no longer receive" their Title 5 pay. This characterization incorrectly assumes that, at the conclusion of a regular 144–hour shift, whatever pay plaintiffs would have received is permanently fixed without regard to whether they worked additional unscheduled overtime.

What plaintiffs overlook is that while defendant's pay scheme must satisfy both statutory requirements, the inquiries are nonetheless independent.[8] Plaintiffs are mixing the statutes by incorporating Title 5 distinctions into Title 29 calculations prior to determination of the separate entitlements. Plaintiffs are in effect suggesting that, through a sort of gestalt process, the whole is greater than the sum of its parts. Such a result is not required by the statutes.

By emphasizing that the comparison is between *"overtime"* calculations, the FPM Letter has taken a reasonable approach to interpreting the two statutes. The letter has been in existence since 1975, virtually contemporaneously with the adoption of the 1974 Amendments. As plaintiffs concede, it is well settled that courts should show "great deference to the interpretation given the statute by the officers or agency charged with its administration." *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Nor is it necessary that the agency's "construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings." *Id.* (quoting *Unemployment Compensation Comm'n v. Aragan,* 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136 (1946)). *See also Red Lion Broadcasting Co. v. Federal Communications Comm'n,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1801–02, 23 L.Ed.2d 371 (1969). The Federal Circuit has also admonished that "the long-standing interpretation placed on a statute by the agency charged with its administration should be followed unless there are compelling reasons that it is wrong." *Money v. OPM,* 811 F.2d 1474, 1477 (Fed.Cir.1987); *see also Young v. Community Nutrition Inst.,* 476 U.S. 974, 980–81, 106 S.Ct. 2360, 2364–65, 90 L.Ed.2d 959 (1986); *Horner v. Andrzjewski,* 811 F.2d 571, 574 (Fed.Cir.1987), *cert. denied,* 484 U.S. 912, 108 S.Ct. 257, 98 L.Ed.2d 215 (1987); *DeCosta v. United States,* 22 Cl.Ct. 165 (Cl.Ct.1990).

Defendant's methodology is not at odds with *Walling v. A.H. Belo Corp.,* 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716 (1942). Plaintiffs rely on that decision for the proposition that they are entitled to FLSA overtime for each hour of work beyond the statutory maximum at a rate "not less than one and one-half times the regular rate at which he is employed." *Id.* at 631, 62 S.Ct. at 1227. From this plaintiffs conclude that each hour of overtime is a separate unit,

8. Plaintiffs' reliance on *Lanehart v. Horner,* 818 F.2d 1574 (Fed.Cir.1987), is inappropriate. Contrary to their suggestion, the effect of that decision was not to eliminate distinctions between the two statutory schemes. The narrow issue in that case involved construction of the Title 5 leave with pay provisions. The court held that the wording of those statutes required, in effect, an incorporation into Title 5 pay of calculations made under Title 29, even though Title 29 would not independently have permitted a recovery. There is no comparable statutory mandate in this instance.

which can be contrasted to Title 5 compensation for the identical hour regardless of the total amount of overtime worked. *Walling* does not stand for that proposition, however, and the language quoted merely confirms what is apparent from the statute. At no time, however, have plaintiffs not received an amount equivalent to one and one-half their regular rate for all FLSA overtime.

Defendant's motion advances a considerably more complex defense of OPM's interpretation of the two overtime statutes. It suggests that two additional provisions of the FLSA are relevant. The first is section 207(e), which in relevant part provides:

> As used in this section the "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include—
>
> . . . .
>
> (5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of ... the employee's normal working hours or regular working hours
>
> .    .    .    .    .

The latter subsection would embrace overtime paid pursuant to section 5542(a)(1)[9]. Indeed the Title 5 provision specifically refers to the compensation it authorizes as "premium" pay. Defendant then points to section 207(h), which states that "[e]xtra compensation paid as described in paragraph[ ] (5) ... of this section shall be creditable toward overtime compensation payable pursuant to this section."

From these two provisions, defendant concludes that in those circumstances in which a comparison of Title 5 overtime to FLSA overtime results in payment exclusively under Title 5, and not under Title 29, section 207(h) credits those Title 5 payments as if they were made under Title 29. It is not entirely clear to the court what infirmity would exist in defendant's practice absent this crediting provision. As discussed above, the real inquiry is whether the pay scheme independently satisfies the two separate entitlement calculations. It does. In that respect section 207(h) is not, in the court's view, necessary to the defendant's position. With respect to any potential infirmity under the FLSA, however, section 207(h) does make it clear that when pay is received under a Title 5 premium pay provision, such as section 5542(a)(1), it is credited toward FLSA entitlement.

Plaintiffs' response to defendant's reliance on section 207(h) is that payments under Title 5 can only be credited, for FLSA purposes, with respect to the precise hours used to calculate the Title 5 premium. This response, like defendant's argument in the first instance, begs the question of whether the underlying overtime pay provisions have to be converted to the same "currency" before they can be compared. As discussed above, the court is of the view that they do not. The FPM Letter's interpretation is reasonable—the defendant is permitted to independently assess what the pay would be under section 207(k) and compare that with what pay would be under section 5542(a). The basis of comparison is pay methodologies expressed in terms of money, not hours.[10]

---

**9.** Section 5542(a)(1) provides that compensation for hours of unscheduled overtime is calculated at "an amount equal to one and one-half times the hourly rate of basic pay of the employee, and all that amount is premium pay."

**10.** Plaintiffs' reliance on *Brennan v. Valley Towing Co.*, 515 F.2d 100 (9th Cir.1975), is misplaced. The language quoted by plaintiffs concerns entirely different circumstances and calculations. The company in that case had not been separately calculating regularly scheduled overtime. It simply paid a straight rate for all

47 hours comprising the regular workweek. It was ordered to determine a regular rate based on pay for the 47–hour period, and then pay one and one-half times that rate for the seven hours of overtime. The company had also been paying generous compensation for hours in excess of 47 per week. It was prevented in the opinion from crediting amounts in excess of overtime pay paid in the post 47–hour period toward regularly scheduled overtime. Defendant's practice here is not analogous. Plaintiffs are consistently receiving a minimum of the equivalent of one and one-half times their regular rate

As the court intimated at the outset, the parties are grappling with the flotsam of incomplete legislation. Titles 5 and Title 29 do not mesh with the machined precision of the gears in a Swiss watch. It is too much to ask that they give a perfectly synchronous performance. A best effort at implementing the spirit of both statutes, while giving employees the benefit of whichever is greater, inevitably creates a crazy quilt. Although the court cannot hope to discern, much less impose, complete coherence, it can ensure that OPM has put together the various pieces of pay entitlement in a way that eliminates gaps and minimizes overlaps. This it has done, and the court cannot conclude that OPM has violated either statute.

### B. The second issue

■ The next issue raised is whether the "two-thirds rule" may properly be applied by agencies in calculating pay for 24–hour shifts of unscheduled overtime. The issue arises only in connection with Title 5.[11] As stated above, some, but not all of the employing agencies represented in this action compensate firefighters for irregular, unscheduled 24–hour overtime shifts by use of the two-thirds rule. The effect is to presume that eight hours of the 24–hour shift are available for sleeping and eating. Defendant concedes that the practice is not derived from a particular statute or government-wide regulation. It contends instead that it is a rule of convenience which can be adopted on an agency-by-agency basis as a device to avoid keeping track of hours spent sleeping and eating. The practice is recognized by FPM Ltr. 551–5 Attachment 3(B)(3)(b):

> When an employee in receipt of premium pay on an annual basis (5 U.S.C. § 5545(c)(1)) is on duty for an additional

24–hour shift outside his regularly scheduled tour of duty, the agency may apply the two-thirds rule for this period of irregular or occasional overtime work.

The Supreme Court has held, in connection with standby time under the FLSA, that time spent eating or sleeping is not compensable. *Skidmore v. Swift & Co.*, 323 U.S. 134, 139, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). The Court of Claims and this court have also held, in connection with Title 5, that time spent eating and sleeping is not compensable as actual work for purposes of Title 5. *See Rapp v. United States*, 167 Ct.Cl. 852, 866, 340 F.2d 635, 642 (1964); *Collins v. United States*, 141 Ct.Cl. 573 (1958); *Gaetke v. United States*, 136 Ct.Cl. 756, 758, 145 F.Supp. 913, 914 (1956). In what amounts to an evidentiary rule implementing this substantive principle, the Court of Claims approved of the use of a presumption that one-third of a 24–hour shift can be deducted as sleeping and eating time. *Rapp*, 167 Ct.Cl. at 867, 340 F.2d 635; *Collins*, 141 Ct.Cl. at 576–77. In *Collins* the court held that the employee could overcome the presumption of the rule by proving that he is required to perform substantial official duties during time set aside for sleeping and eating. *Id.; see also Rapp*, 167 Ct.Cl. at 866, 340 F.2d at 643 (except "where substantial labor is performed in the time set aside for sleeping and eating"). A similar result obtained in *Armstrong v. United States*, 144 Ct.Cl. 659 (1959), *cert. denied*, 361 U.S. 825, 80 S.Ct. 72, 4 L.Ed.2d 68 (1959). After confirming that time spent eating and sleeping is not compensable, the court considered the evidence in the case with respect to whether plaintiffs had proven that they performed more than 16 hours of actual work. Even after deducting all time spent on emergencies and other miscellaneous interruptions,

---

of pay for all overtime, scheduled or unscheduled. This satisfies the concern expressed in the Ninth Circuit's opinion that each hour of overtime must separately meet the "one and one-half of regular rate" requirement.

**11.** In their brief in support of their motion for summary judgment, plaintiffs draw for support from regulations concerning minimum sleep times applied in calculating FLSA overtime.

*See* 5 C.F.R. § 551.432 (1990); 29 C.F.R. §§ 553.15, 785.22 (1990). They assert that these FLSA provisions should be applied in determining what constitutes sleep time under Title 5. The court does not understand this argument to constitute a separate claim for relief, but rather, to be relevant only in the event that the two-thirds rule is found to be unenforceable. None of the original or amended complaints treat this matter as a separate liability issue.

the court found that not only was a minimum of eight hours of non-work time available, but in fact it was not intruded upon.

Plaintiffs argue that *Skidmore* and cases cited by the Court of Claims in *Armstrong* do not support the procedural device of a presumption that certain hours are "spent" sleeping. The point being that *Armstrong* went beyond these precedents by permitting agencies to treat time "allowed" as sleep time as non-compensable and that it is thus inconsistent with the Supreme Court ruling, and others. Plaintiffs are wrong on two counts. First, the Court of Claims in *Armstrong* plainly held that the two-thirds rule is merely a presumption, a temporary substitution of proof, in the absence of evidence to the contrary. If that were not the case, it would not have evaluated evidence supporting plaintiffs' contention there that eight hours were not in fact available to them. In other words, the question in any action is, "what in fact occurred?" If there is no proof put on by the employees that the presumption is wrong as a matter of fact, then the presumption satisfies the proof requirement. Second, the *Skidmore* decision is not inconsistent with a practice that certain hours will be presumed to have been available for sleeping or eating. It merely holds, insofar as is relevant here, that an employer does not have to pay for time spent eating or sleeping. It did not go further to limit that rule by holding that time merely made available, but not actually utilized for sleeping or eating, must be compensated.

The practical advantages of the two-thirds rule are self-evident. Without it, someone would have to keep track on a minute-by-minute basis of whether employees were eating or sleeping (presumably the latter data would have to be collected by others using their best judgment), or the agency would have to designate certain times as sleeping or eating times, and the employees would have to keep track when those times were interrupted. The question is whether those agencies that choose to simplify their record keeping by using the rule are violating the law. The court concludes that they are not, so long as the presumption can be overcome by proof. If an agency chooses to use the rule, an employee must allege and put on prima facie evidence that there were not in fact eight hours actually available for sleeping and eating. *See Armstrong,* 144 Ct.Cl. at 664; *Collins,* 141 Ct.Cl. at 577.

## CONCLUSION

■ For the reasons expressed above, the court denies plaintiffs' motion for summary judgment and grants defendant's motion for summary judgment.[12] The Clerk is

---

12. Defendant has also asserted that 29 U.S.C. § 259 provides a *complete defense* to the Title 29 claims within issue one. That provision insulates an employer from liability when it acts in good faith reliance on a ruling of the Administrator of the Wage and Hour Division. Defendant correctly points out that OPM was granted authority to administer the FLSA for the federal sector by the 1974 Amendments. 29 U.S.C. § 204(f). For the reasons discussed in *Abundis v. United States,* 15 Cl.Ct. 506 (1988), the court concludes that the section 259 defense would be unavailable here. Few provisions as graphically demonstrate the inappropriateness of wholesale adoption of private sector FLSA provisions into federal personnel practice. Defendant's position ignores an overriding reality of private sector labor law—namely, that there is a meaningful distinction between the defendant employer and the Administrator. No such distinction exists in cases brought in this court. *But see Palardy v. Horner,* 711 F.Supp. 667 (D.Mass. 1989). Defendant appears in this court as the United States Government, not as a particular agency.

In any event, section 259 would not be a bar to claims arising out of sections 5542(a)(1) and 5545(c)(1). If the defense was needed and applied, an interesting question would arise. In the first issue, plaintiffs' claims are under both Title 5 and Title 29. It would not be possible to say which Title was most favorable to a given plaintiff without first making the appropriate calculations, for each pay period, and determining which gave the largest recovery. This would presumably vary from pay period to pay period for each employee. Assuming Title 29 was most favorable for a given pay period, would the availability of the section 259 defense allow a firefighter to fall back on Title 5? A similar exercise could be performed by overlaying the additional issue of the statute of limitations. The two-year statute of limitations is one Title 29 provision that plaintiffs understandably do not seek to incorporate into Title 5 practice. Would overtime be recoverable under Title 5 even in those circumstances in which Title 29

directed to enter judgment dismissing the complaints.

provides the greater nominal recovery on the theory that 100 percent of a smaller sum is better than 0 percent of a larger sum? These conundra are left for others. The court has found section 259 inapplicable, and plaintiffs' view on the merits has not prevailed.