William **PALARDY**, John Murphy, Steven Fontaine, Domenic Petrola, et al., Plaintiffs,

v.

Constance J. **HORNER**, Director, Office of Personnel Management, James H. Webb, Jr., Secretary, Department of the Navy, and United States of America, Defendants.

Civ. A. No. 87–2732–T.

United States District Court, D. Massachusetts.

April 7, 1989.

---

Jeffrey Sumberg, Suzanne L. Kalfus, Nat. Federation of Federal Employees, Washington, D.C., and Frederick T. Golder, Bernstein, Golder & Field, P.A., Lynnfield, Mass., for plaintiffs.

Christine M. Roach, Asst. U.S. Atty., for defendants Horner, Webb and U.S.

**MEMORANDUM**

TAURO, District Judge.

Plaintiffs, 29 employees of the Department of the Navy,[1] bring this action to challenge the Navy's decision to classify all of them as exempt from the overtime requirements of the Fair Labor Standards Act, 29 U.S.C. § 207 ("FLSA"). Additionally, they seek to recover back pay to November 1, 1985, the date of their change in FLSA status, as well as liquidated damages.

The parties have submitted the case to this court on an agreed-upon documentary record. This opinion constitutes this court's findings of fact and conclusions of law, pursuant to Fed.R.Civ.P. 52(a).

## I.

### Introduction

#### A. Plaintiffs' Job Descriptions

Plaintiffs are employed by the Navy in fifteen different positions. All are technicians rated at the GS–11 grade level.[2] Although the technical fields vary, there are no material differences in the basic functions these plaintiffs perform.

Plaintiffs perform technical tasks relating to the proper design, repair, testing and overhaul of naval ship systems and equipment, as well as the vessels themselves. They are primarily responsible for preparing drawings and schematics used in installing and reconfiguring equipment on navy vessels. These tasks are accomplished by consulting standard texts, guides and established formulas. The work is practical rather than theoretical, and does not require an advanced course of academic study.[3] Rather, the skills needed to perform all assigned tasks are obtained

---

**1.** Although the complaint only names four individual plaintiffs, the parties have submitted this case on a record reflecting the existence of 25 additional Navy employees. Each of these employees have filed the required notice of consent to become a party plaintiff. *See* 29 U.S.C. § 216(b). Accordingly, the complaint is amended to include these additional employees as plaintiffs in this action. *Cf.* Fed.R.Civ.P. 15(b) ("When issues not raised by the pleadings are tried by express or implied consent of the par-

ties, they shall be treated in all respects as if they had been raised in the pleadings.").

**2.** Three of the positions were originally rated at GS–10. After one year's successful performance as GS–10's, the employees involved automatically became GS–11's.

**3.** The only formal educational requirement for any of these positions is a high school diploma.

through on the job training. And although plaintiffs often work with only a minimum amount of supervision, the more complex tasks related to their work are performed by professional engineers.

### B. Overtime Provisions of the FLSA

The FLSA requires employees, not exempt from its provisions, to receive "compensation for ... employment in excess of [40 hours per week] at a rate not less than one and one-half times the[ir] regular rate [of pay]." 29 U.S.C. § 207(a)(1). Executive, administrative and professional employees are exempt from the overtime provisions of the FLSA. 29 U.S.C. § 213(a).

Rather than pay exempt employees their regular rate of pay for overtime, as the FLSA would permit, the federal government utilizes a slightly different compensation formula. *See* 5 U.S.C. § 5542(a). Employees, such as plaintiffs, who are classified higher than GS–10 receive one and one-half times the GS–10, step 1 rate of pay. While plaintiffs were classified as FLSA-exempt, therefore, they received more than their regular hourly wage for overtime work, but less than time and a half.

### C. History of the Positions

Originally, all the positions held by plaintiffs were classified as exempt from the overtime provisions of the FLSA. The positions were assigned to the Portsmouth Naval Shipyard in Kittery, Maine until 1978, when they were transferred to the Supervisor of Shipbuilding, Conversion & Repair in Boston, Massachusetts ("SUP-SHIP Boston"). At that time, all of these positions were reclassified from exempt to non-exempt. No substantive changes were made to the position descriptions when the transfer occurred.[4]

In 1985, the Office of Personnel Management ("OPM") finalized a regulation that established a rebuttable presumption that any government employee classified at GS–11 or higher was exempt from the overtime provisions of the FLSA. 5 C.F.R. § 551.203(c), *repealed,* 53 Fed.Reg. 1739

(January 22, 1988) ("presumption regulation"). In accordance with this regulation, all the plaintiffs in this case were reclassified as exempt, effective November 1, 1985.

The rebuttable presumption regulation was short-lived. On June 26, 1987, the D.C. Circuit declared it invalid. *American Federation of Government Employees v. OPM,* 821 F.2d 761, 769–71 (D.C.Cir.1987) (vacating the regulation as inconsistent with the FLSA).

Rather than reclassify plaintiffs as nonexempt immediately after the presumption regulation was invalidated, the Navy decided to retain plaintiffs' classification as exempt, pending a case-by-case review of all affected positions. That review was completed during the summer of 1988, and was accomplished without reference to the presumption regulation. Rather, the review was based on criteria that pre-dated the presumption regulation. All but one of the plaintiffs, Robert Garnett, were determined to be exempt from the FLSA overtime provisions.

These same plaintiffs now challenge their exempt reclassification. The parties agree that this court reviews the FLSA status of the employees *de novo.*

## II.

### *FLSA Classification*

█ The FLSA provides that "any employee employed in a bona fide executive, administrative or professional capacity" is exempt from the overtime provisions of the FLSA. 29 U.S.C. § 213(a)(1). The burden of proving that an employee fits within a particular exemption is on the employer. *See Corning Glass Works v. Brennan,* 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974). The government seeks to meet its burden of proof by characterizing the technician positions at issue in this case as both administrative and professional.

---

**4.** The only modifications to the position descriptions reflected differences in the organizational structure at SUPSHIP Boston.

In evaluating the applicability of the challenged exemptions, this court is guided by two regulatory sources. The first, 29 C.F.R. § 541, is published by the Wage and Hour Division of the Department of Labor, the agency charged with enforcement of the FLSA's overtime provisions in the private sector. The second is an attachment to a letter prepared by the Office of Personnel Management, the agency charged with enforcement of the FLSA's overtime provisions against government agencies. *See* Federal Personnel Manual System Letter No. 551–7 and Attachment (July 1, 1975) ("Attachment to FPM Letter"). The FPM letter is meant to assist government agencies in classifying their employees for purposes of the FLSA.

### A. Administrative Exemption

Generally, the administrative exemption is meant to apply to employees whose primary duties are "directly related to management policies or general business operations." 29 C.F.R. § 541.2. To classify an employee as administrative, at a minimum, the employee's primary duty must be work that:

(a)(1) Significantly affects the formulation or execution of management policies or programs; or

(2) Involves general management or business functions or supporting services of substantial importance to the organization serviced; or

(3) Involves substantial participation in the executive or administrative functions of a management official.

Attachment to FPM Letter at 4. Each of these three alternatives are discussed *seriatim.*

Work that "significantly affects the formulation or execution of ... polic[y]" refers to employees who either "actually make policy" or "develop[ ] proposals that are acted on by others." Attachment to FPM letter at 8. These employees typically are involved in "planning, developing, promoting, coordinating, controlling, or evaluating operating programs of the employing organization." *Id.* Plaintiffs neither make nor implement policy. Their role is limited to performing technical tasks

to assure that naval ship systems and equipment is properly designed, repaired, tested and overhauled. Consequently, they do not fit within the first alternative.

Neither are plaintiffs involved in "general management or business functions or supporting services of substantial importance." The FPM letter defines this category as:

(1) Providing expert advice in specialized subject matter fields, such as that provided by management consultants or systems analysts; [or]

(2) Assuming facets of the overall management function, such as safety management, personnel management, or budgeting and financial management; [or]

(3) Representing management in such business functions as negotiating and administering contracts, determining acceptability of goods or services, or authorizing payments; or

(4) Providing supporting services, such as automated data processing, communications, or procurement and distribution of supplies.

Attachment to FPM letter at 9. Although plaintiffs perform important work, it does not rise to the level the regulations require. They do not provide expert advice that is typical of consultants or systems analysts. Moreover, they do not perform management functions. Finally, they neither represent management nor provide support services. The second alternative, therefore, is unavailing.

The remaining alternative includes individuals who "substantially participate in the executive or administrative functions of a management official." Typically, these employees are "secretaries, administrative or executive assistants, aids, etc." Attachment to FPM Letter at 9. Plaintiffs do not fit this category. Consequently, none of plaintiff's positions may properly be characterized as administrative.

### B. Professional Exemption

The professional exemption is meant to apply to employees whose primary work requires "knowledge of an advance[d] type

in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study." 29 C.F.R. § 541.3(a)(1). The FPM letter defines professional employees, at a minimum, as those that perform work that:

> (a)(1) . . . requires knowledge in a field of science or learning customarily and characteristically acquired through education or training that meets the requirements for a bachelor's or higher degree . . . or [involves] work comparable to that performed by professional employees on the basis of specialized education or training and experience which has provided both theoretical and practical knowledge of the specialty, including knowledge of related disciplines and new developments in the field.

Attachment to FPM Letter at 5.[5]

The only education required for plaintiffs' positions is a high school diploma. The regulations clearly indicate that a professional position normally requires a higher level of formal education. 29 C.F.R. § 541.302(b) ("[the required level of knowledge generally] cannot be attained at the high school level."). And although plaintiffs require specialized training to perform their tasks, the assignments do not involve "theoretical . . . knowledge of the specialty", nor are they required to have "knowledge of related disciplines and new developments in the field." Attachment to FPM Letter at 5. Consequently, none of plaintiff's positions can properly be characterized as professional.

Plaintiffs, therefore, may not properly be classified as exempt from the FLSA overtime provisions. As a result, they are entitled to receive "one and one-half times the[ir] regular rate [of pay for all hours worked in excess of 40.]" 29 U.S.C. § 207(a)(1).

## III.

### Damages

Plaintiffs seek back pay from November 1, 1985, the date of their misclassification.

Additionally, they seek an award of liquidated damages.

### A. Back Pay

The Navy contends that it is not liable for back pay because the erroneous reclassification of plaintiffs as FLSA-exempt was based on its good faith reliance on an OPM regulation. *See* 29 U.S.C. § 259(a) (establishing a defense for employers who rely on governmental regulations later held invalid). Additionally, the Navy maintains that § 259 protects its decision to retain plaintiffs as FLSA-exempt even after the presumption regulation was invalidated.

The first issue is whether a government agency may invoke the protections of § 259. Section 259 provides:

> [N]o employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay . . . overtime compensation . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section, or any administrative practice or enforcement policy of such agency. . . . Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect.

29 U.S.C. § 259(a). Subsection (b) of the statute identifies the appropriate agency as "the Administrator of the Wage and Hour Division of the Department of Labor." 29 U.S.C. § 259(b) ("Administrator"). To prevail on a § 259 defense, an employer must establish: "(1) that its action was taken in reliance on a ruling of the Administrator, (2) that it was in conformity with that ruling, and (3) that it was in good faith." *Equal Employment Opportunity Com-*

---

5. An additional alternative, not applicable to this case, is work that is artistic in nature and involves creativity. *See* Attachment to FPM letter at 5 (requirement (a)(2)).

*mission v. Home Ins. Co.*, 672 F.2d 252, 263 (2d Cir.1982).

■ Plaintiffs do not dispute that the reclassification was based on the Navy's reliance on the now invalid presumption regulation. Rather, they contend that the § 259 defense only shields private employers, not government employers, from back pay liability. Plaintiffs rely on a recent decision of the United States Claims Court, the only case to discuss the availability of a § 259 defense to a government agency. *Abundis v. United States*, 15 Cl.Ct. 506, 510–13 (1988), *petition for interlocutory review denied*, Misc.Docket No. 240 (March 8, 1989). *But cf. Beebe v. United States*, 640 F.2d 1283, 1293–94, 226 Ct.Cl. 308 (1981) (assuming the § 259 defense is available to the government, but finding it inapplicable); *Wheeler v. United States*, 9 Cl.Ct. 579, 585 (1986) (same).

*Abundis* held that the § 259 defense was not available to a government agency that relied on the OPM presumption regulation. The court reasoned that § 259 only precluded liability for good faith reliance on a regulation of the Administrator of the Wage and Hour Division. Because OPM is not the agency specifically referred to in the statute, the defense was not available. *Id.* at 510 ("The presumption regulation was issued by OPM, not by the Department of Labor."). This court believes the *Abundis* approach fails to read the FLSA, along with its amendments, as the fully integrated statute Congress clearly intended. *See* 1A N. Singer, *Sutherland Statutory Construction* § 22.34, at 293–94 (Sands 4th ed. 1985) (unamended sections of a statute should be construed in light of subsequent amendments).

When § 259 was added to the FLSA as part of the Portal to Portal Act of 1947, the federal government was not covered by the statute's overtime provisions. The Administrator of the Wage and Hour Division was charged with ensuring private employer compliance with the provisions of the FLSA. Consequently, when § 259 was added to the statutory scheme, it only made reference to the Administrator.

In 1974, the FLSA was amended to apply with equal force to the federal government in its capacity as employer. *See* 29 U.S.C. §§ 203(d), (e)(2)(A), (x) (defining "employer", "employee", and "public agency"). At that time, authority to oversee government employer's compliance with the overtime provisions of the FLSA was vested in the Civil Service Commission. 29 U.S.C. § 204(f) ("Notwithstanding any other provision of this chapter, or any other law, the Civil Service Commission is authorized to administer the provisions of this chapter with respect to any individual employed by the United States."). The Civil Service Commission's authority was later transferred to the Office of Personnel Management. *See* Reorganization Plan No. 2 of 1978, § 102, 92 Stat. 3783, *codified as a note to* 5 U.S.C. § 1101 ("Except as otherwise specified in the Plan, all functions vested by statute in the United States Civil Services Commission ... are hereby transferred to the Director of the Office of Personnel Management.").

At the time Congress passed the 1974 amendments it did not amend § 259 to specifically refer to the Civil Service Commission. Nevertheless, that does not mean that Congress made a conscious decision to preclude the government from relying on that defense. Rather, the legislative history surrounding the 1974 amendments clearly indicates that Congress viewed the Civil Service Commission as the equivalent of the Administrator of the Wage and Hour Division of the Department of Labor. *See* Report of the House Committee on Education and Labor, H.Rep. No. 913, 93rd Cong., 2d Sess., *reprinted in*, 1974 U.S. Code Cong. & Admin.News 2811, 2837 ("It is the intent of the committee that the Commission will administer the provisions of the law in such a manner as to assure consistency with the meaning, scope and application established by the rulings, regulations, interpretations and opinions of the Secretary of Labor which are applicable in other sectors of the economy."). In amending the FLSA to apply to the federal government, Congress sought to provide federal employees with as much, but no more, protection than their counterparts in

the civilian economy enjoyed. To deny a government agency the § 259 defense would frustrate the purposes of the FLSA.

In addition to the statutory scheme and the legislative history, the policies underlying § 259 support allowing a federal agency to invoke the defense. Section 259 was intended to assure employers that they would not be penalized for complying with regulations issued by the federal agency charged with enforcing the FLSA. *See Home Ins. Co.* 672 F.2d at 263 ("The Portal Act was designed to protect employers from liability if they took certain actions on the basis of an interpretation of the law by a government agency, even if the agency's interpretation later turned out to be wrong."). That logic applies with equal force to a federal agency that acted in conformity with regulations promulgated by OPM, the agency charged with FLSA enforcement. Indeed, failure to allow the federal government to use the § 259 defense would produce the anomalous result of protecting private employers from liability even though the law does not require them to comply with the Administrator's regulations while denying that protection to federal agencies that are required by law to conform their conduct to OPM regulations. *See* 5 C.F.R. § 551.201 ("The employing agency *shall* exempt from the overtime provisions of the Act any employee who meets the exemption criteria of this subpart and such supplemental interpretations or instructions as shall be issued by the Office of Personnel Management.") (emphasis added).

After reviewing the statutory scheme embodied in the FLSA, the legislative history of the 1974 amendments and the general policies underlying § 259, this court concludes that Congress intended to afford federal agencies the same protections against liability as it provided to private employers. Whether § 259 applies to the Navy's misclassification of plaintiffs as FLSA-exempt, and its later decision to retain plaintiffs' classification pending a case-by-case evaluation, depends on three factors: "(1) ... [whether] its action was taken in reliance on a ruling of [OPM], (2) ... [whether] it was in conformity with that ruling, and (3) ... [whether] it was in good faith." *Home Ins. Co.*, 672 F.2d at 263.

As far as the November 1985 decision to reclassify plaintiffs as FLSA-exempt, the Navy meets all three requirements. That decision was based entirely on the Navy's good faith belief that the OPM presumption regulation was valid. The fact that such belief was erroneous does not render it unworthy of the § 259 defense.

The decision to retain plaintiffs as FLSA-exempt after the presumption regulation was invalidated is not entitled to the § 259 defense. That decision was made by the Navy, itself. *See* Affidavit of Sara Gilbert ¶ 7 ("A message from the Navy Department's Office of Civilian Personnel Management (OCPM) ... advised [SUPSHIP Boston] not to take any action regarding the FLSA status of employees until further guidance was received."). Although § 259 affords a defense for good faith reliance on regulations and interpretations of the FLSA by the government agency charged with administering it, OPM in this case, it does not permit an agency to avoid liability by relying on its own interpretation of the Act. *Cf. Home Ins. Co.* 672 F.2d at 266 ("[T]he Portal Act was not intended to allow ... [a private] employer to insulate itself from liability for the consequences of its own improvident interpretation of the statute.").

The Navy was entitled to invoke the presumption regulation in 1985. Once that regulation was invalidated, however, the Navy was obligated to return plaintiffs to their status as FLSA-nonexempt. Consequently, § 259 only shields the Navy from back pay liability from November 1, 1985, until June 26, 1987. Thereafter, an award of back pay is appropriate.

## B. Liquidated Damages

In addition to an award of back pay, a court has discretion to award liquidated damages. 29 U.S.C. § 260. Section 260 provides its own standard to guide the court's discretion:

> [I]f the employer shows to the satisfaction of the court that the act or omission

giving rise to ... [the lawsuit] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act ... the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount [of back pay liability].

29 U.S.C. § 260. Unlike § 259, § 260 does not require the employer to rely on the government's interpretation of the FLSA. Rather, an employer's own good faith interpretation of the FLSA will normally preclude liability for liquidated damages.

The original reclassification of plaintiffs as FLSA-exempt was accomplished by reference to the later invalidated presumption regulation. The Navy had ample reason to believe the reclassification was valid. And the Navy's decision to retain plaintiffs as FLSA-exempt was based on its reasonable expectation, later dashed by this court, that a case by case evaluation would confirm that plaintiffs had properly been classified as exempt.

The Navy, at all times, acted in good faith and in the honest, but mistaken, belief that its actions were consistent with the FLSA. This case, therefore, is not one where an award of liquidated damages would be appropriate.

## IV.

### Conclusion

Plaintiffs do not perform duties that can properly be characterized as administrative or professional. They are, therefore, entitled to receive one and one-half times their regular rate of pay for future overtime.

Because the Navy reclassified plaintiffs based on a good faith reliance on the OPM presumption regulation, later declared invalid, it is protected from liability for back pay. That protection, however, ended on June 26, 1987 when the D.C. Circuit invalidated the presumption regulation. Nevertheless, as the Navy's decision to retain plaintiffs as FLSA-exempt, pending a case-by-case evaluation, was based on the Navy's good faith belief that its actions

were in conformity with the FLSA, liquidated damages are not warranted.

An order will issue.

## ORDER

For the reasons set forth in the accompanying memorandum, judgment is entered in favor of plaintiffs. Accordingly, defendants are hereby ordered to reclassify plaintiffs as non-exempt from the overtime provisions of the Fair Labor Standards Act. Additionally, plaintiffs are awarded back pay from June 26, 1987.

IT IS SO ORDERED.